**SO ORDERED: April 28, 2010.**



Anthony J. Metz III
United States Bankruptcy Judge



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAUL ELLIOTT BULLOCK, | ) | CASE NO.: 09-10561-AJM-13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ANGELA GALE BULLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PRO. NO.: 09-50647 |
| | ) | |
| PAUL ELLIOTT BULLOCK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter came before the Court for trial on April 19, 2010 wherein the Plaintiff, Angela Bullock (the "Plaintiff") appeared in person and by counsel, Mark Watson. The Defendant, Paul Bullock (the "Defendant") appeared in person and by counsel, Steven Dick.

The Court has reviewed the exhibits admitted into evidence and has heard the testimony of witnesses and the arguments of counsel, and now makes its Findings and Conclusions pursuant to Fed. R. Bankr. P. 7052.

### *Findings of Fact*

1. The Defendant filed a voluntary chapter 13 case on July 23. 2009.

2. The Plaintiff and Defendant were formerly married. On May 11, 2005, the Plaintiff filed a Verified Petition for Dissolution of Marriage and Request for Provisional Orders in the Marion County Circuit Court; and docketed as Cause No.: 49D13-0505-DR-018095. The Parties moved said Dissolution Proceeding from the Marion County Circuit Court to the Benton County Circuit; wherein the proceeding was docketed as Cause No.: 04C01-0508-DR-147.

3. At the time of the dissolution proceeding (and presently), the Plaintiff was a licensed practicing attorney in the State of Indiana. The Defendant is and was at the time of the dissolution a financial planner and was not represented by counsel in the dissolution proceeding.

4. The Parties entered into a Verified Marital Settlement Agreement (the "Agreement") which provided for the allocation among the parties of property and liabilities, as well as establishing custody, visitation and support terms with respect to the parties' three children. The Agreement also provided that the Plaintiff be paid a sum certain as an equalization payment related to the equity in the marital estate. The Agreement was drafted by the Plaintiff. The terms of the Agreement were incorporated into the Dissolution Decree entered by the Benton Circuit Court on or about August 17, 2005.

5. Section 9 of the Agreement in part provided that the Defendant agreed to pay the federal and state income tax liabilities from 1995 to 2005 and hold the Plaintiff harmless with respect to those tax liabilities and any penalties associated with them. Apparently, the only remaining tax

liabilities as of the date of the trial are joint income tax liabilities for taxable years 2002, 2003, and 2004 (the "Tax Debt").  The Court takes judicial notice that the IRS filed a Proof of Claim, docketed as Claim #6 which reflects the joint income taxes due for taxable years 2002, 2003, and 2004 are only entitled to general unsecured status within this proceeding.  The Defendant's chapter 13 plan provides for payment in full of federal taxes in the amount of $22,854.19.

6.    Section 7 of the Agreement provided that the Plaintiff would be responsible for and hold the Defendant harmless from any student loan debt in excess of $70,000 and that the Defendant agreed to assume payment of the Plaintiff's student loans after the Plaintiff had paid them down to the amount of $70,000 (the "Student Loan Debt").  Section 7 further provided that the parties agreed that they were uncertain when the Defendant's obligation became due.

7.    The Plaintiff testified at trial that she was awarded the marital residence in which there was little, if any, equity as well as an account with a value of approximately $1000 and the Mercedes Benz automobile.  She was awarded her share of the parties' country club membership, which she promptly closed after the divorce.

8.    The Defendant testified at trial that he was awarded the following property under the Agreement: (a) A $5000 interest in a Piper airplane; (b) the accounts he held at Merrill Lynch; (c) unvested stock in Merrill Lynch estimated to be worth $175,000; and (d) bank accounts and IRA's in his name.

9.    Section 13 of the Agreement was entitled "Payment of Equity" and provided that "to equalize the respective assets and debts of each party", the Defendant would pay the Plaintiff her portion of equity in the marital estate.  Section 13 set out a schedule of monthly payments and it appears that the monthly payments were to be made over a ten (10) year period (the "Equalization Payment Debt").  The monthly payments ranged in amount from $3000 to $500,

3

with the greatest monthly amounts due the first three months (until December 31, 2005), and with payments decreasing to $500 for the last two years of the 10-year period. Payment of the Equalization Payment Debt terminated upon a date certain and not upon the Plaintiff's remarriage or death. Section 13 also provided that "the parties agree that this obligation [the Equalization Payment Debt] is a property settlement obligation and is NOT dischargeable in bankruptcy by [Defendant]". Defendant testified that he made payments under these terms from October 2005 until the end of 2008 after he lost his employment.

10. The Plaintiff asserts that the Tax Debt, the Student Loan Debt and the Equalization Payment Debt (collectively, the "Obligations") are "domestic support obligations" under Bankruptcy Code Section 101(14) and therefore are nondischargeable in this chapter 13 case under Bankruptcy Code Sections 523(a)(5) and 1328(a) and entitled to priority status payable in full through the Defendant's chapter 13 plan under Bankruptcy Code Section 507 (a)(1).

11. The Defendant concedes that the Obligations were incurred in the course of a divorce decree and properly within the definition of §523(a)(15). However, the Defendant does not concede that the Obligations are "domestic support obligations" and therefore nondischargeable under Sections 523(a)(5) and 1328(a). Further, the Defendant maintains that, even as Section 523(a)(15) debts, the Obligations are dischargeable in a chapter 13 case pursuant to Bankruptcy Code Section 1328(a).

12. Plaintiff also asserts that the Defendant filed his chapter 13 case in bad faith. Plaintiff also alleges nondischargeability under Section 523(A)(2) and asserts that the Defendant committed fraud upon the Plaintiff at the time the Agreement was executed.

13. At trial, the Defendant provided convincing testimony in support of his petition and schedules that at the time of the bankruptcy he had lost his employment; had taken significant

4

withdrawals from retirement accounts to pay child support and equalization payments; was facing foreclosure; and unable to pay the Obligations and his other debts.

14.     Any Finding of Fact which should be properly characterized as a Conclusion of Law shall be so construed.

## *Conclusions of Law*

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      BAPCPA [1], enacted by Congress in 2005, significantly modified the Bankruptcy Code, and very specifically the treatment and dischargeability of liabilities incurred as a result of a divorce. For example, Section 101(14A) was created and defines "domestic support obligations" as obligations in the nature of alimony, maintenance, or support, and to differentiate them from obligations in the nature of property settlement.

3.      The priority provisions of §507 were also modified to give first and highest priority to the payment of domestic support obligations whether it be within Chapter 7 or Chapter 13.

4.      Similarly, the discharge provisions under §§523(a)(5) and (15) were extensively modified to specifically delineate the treatment of "domestic support obligations" from all other types of obligations incurred in the course of a divorce decree or similar order. Within Chapter 7 said delineation between §§523(a)(5) and (a)(15) is virtually meaningless as both forms of obligations are non-dischargeable. *In re Golio*, 393 B.R. 56, 61 (Bankr. E. D. N. Y. 2008). However, within Chapter 13, said delineation is significant as §1328(a)(2) does not incorporate §523(a)(15) within

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

the provisions excepted from discharge in a Chapter 13 completion discharge. *In re Johnson*, 397 B.R. 289 (Bankr. M.D.N.C. 2008).

5. In this adversary proceeding to determine dischargeability, the Plaintiff bears the burden to prove by a preponderance of the evidence that the obligations at issue are in the nature of alimony, maintenance, or support.

6. There appears to be no ongoing dispute with respect to the Tax Debt as the Defendant has provided for full payment of what remains of that debt.

7. The Court concludes that the Student Loan Debt is not in a nature of support and therefore is not a "domestic support obligation". Tellingly, it is the Plaintiff who is first responsible to pay the student loan down to $70,000 and the Defendant's obligation to commence payments is triggered only after the student loan is paid down to that amount. Had this debt been intended as support for the Plaintiff's benefit or the benefit of the parties' children, payment of it would not have been structured to have Plaintiff make the first payments until it reached a certain balance. Furthermore, nothing in Section 9 of the Agreement indicates that it was intended as support and no other Section of the Agreement refers to support "as provided for in Section 9" or similar language. Thus, the Court concludes that the Student Loan Debt is in the nature of property settlement.

8. The Court also concludes that the Equalization Payment Debt is not in the nature of support as it is a sum certain , payment of which terminates on a date certain. Had this debt been intended as support, payment of it typically would have terminated upon either the Plaintiff's remarriage or her death. See, *In re White*, 408 B.R. 677,681-682 (Bankr. S. D. Tex. 2009); *Webb v. Schleutker*, 891 N.Ed2d 1144, 1156 (Ct. App. Ind. 2008). Again, nothing in Section 13 of the Agreement indicates that the parties' intended this debt to be payment of support; in fact, to the

6

contrary, Section 13 specifically denominates the Equalization Payment Debt as "property settlement".

9. Finally, it was the Plaintiff who, with assistance from others, drafted the Agreement. The Defendant was not represented by counsel in the negotiation of the Agreement or in the course of the divorce proceedings. There is no ambiguity in the Agreement with respect to Sections 7, 9 and 13, the pertinent sections for purposes of this adversary proceeding and therefore any testimony as to what the Plaintiff "thought" would happen is of no value and is inadmissible. Even if this Court had found any of these sections to have been ambiguous, that ambiguity would have been construed against the Plaintiff who drafted the Agreement.

10. The Court concludes that the Obligations are dischargeable under Section 523(a)(2). There was no evidence presented indicating what false representations, if any, the Defendant made at the time the Agreement was executed upon which the Plaintiff relied that induced her to execute the Agreement. Indeed, it was the Plaintiff who drafted the Agreement. If the Plaintiff believes the Defendant filed his chapter 13 case in bad faith or proposed his chapter 13 plan in bad faith, the Plaintiff may file the appropriate pleading in the main bankruptcy case under Bankruptcy Code Sections 1307 and 1325 respectively.

11. Judgment determining the Obligations are in the nature of property settlement under Section 523(a)(15) will be entered.

###

Distribution:
Mark Watson, Attorney for the Plaintiff
Steve Dick, Attorney for the Defendant
Case Trustee